Good morning, Mr. Pomelo. Yes, good morning as well, Your Honor. It may please this Honorable Court. Attorney Todd Pomelo along with co-counsel Jeffrey Rubin and Kimberly Williams here today on behalf of our client, Fabio De Silveira. Mr. De Silveira, like many other immigrants, came to this country for a better life. He came here in 1997 and has lived here nearly 22 years. He has two children, both daughters, U.S. citizens, both of whom suffer from medical issues. But beyond that, he's able to provide for them to go to private schools. He owns a used car dealership, which doesn't sell three-wheeled Chevys, that grows $10 to $20 million a year in gross sales. He has 20 citizen and green card holder employees. There's a lot of stakeholders that rely on him. And he's lived a commendable life. He has a few arrests for cases that were dismissed. But the key point in this case is whether his time has ever stopped running. Pereira v. Sessions states unequivocally that a notice to appear lacking a time or place is not a notice to appear at all. It's a putative document. And courts throughout the country appear to miss this crucial point. They keep referring to it as a defective instrument. It's not. It's putative. It is not like the three-wheeled Chevy. The Supreme Court states that unequivocally in rejecting the one dissenting Justice Alito's opinion. Justice Alito said it's like a three-wheeled Chevy. It's still a car. The hearing notice here would be the proverbial fourth wheel. You add the fourth wheel, you get your Chevy, you drive it off the lot. We know a hearing notice can't perfect or stop time in this circumstance because this very court just a few months ago in the Pontus case that was discussed earlier, this is, I'm quoting verbatim, to be sure there is some common sense discomfort in adopting the position that a single document labeled notice to appear, in quotes, must comply with a certain set of requirements for some purposes like triggering the stop time rule, but with a different set of requirements for others like vesting jurisdiction with the Immigration Court. So two judges that were on that panel are also on this panel. Judge Cayeta and Judge Sreya. So the Pontus, Gisela's Pontus case states unequivocally that a notice to appear is a single document requiring a date and time to trigger the stop time rule. And why do we know that's the case? Because Pereira Secession states unequivocally that it's not like a three-wheel Chevy, but more importantly, it's not akin to an unsigned notice of appeal. Without a date or time or a place, a notice to appear, it's stripped of its essential essence. It's putative. It is not a notice to appear at all. Now, Judge Cayeta, fellow Mainer, I'm from Lewiston, you probably appreciate this. Imagine you go into DeMillo's Floating Restaurant and you order a cup of clam chowder that they were renowned for back in the day. And they give it to you and you start eating it, it's missing the potatoes, it's missing the clams. Tell the waiter, where's my chowder? This isn't chowder. I'm from Maine, I know better than this. They bring you out a side of potatoes and clams and they just say, here you go. I've just protected your chowder. That's ridiculous. You would expect the chef to cook you a proper meal and serve you the chowder or get a pizza. It's missing the sauce, it's missing the pepperoni. They don't bring you a side of sauce and a side of pepperoni and say, here you go, here's your pizza. Because just like the notice to appear, that chowder would be stripped of its essential essence. It doesn't have the clams, the ingredients aren't coagulating and forming the cohesive whole that makes a clam chowder. And any New Englander would laugh anyone out here if they tried to do that. And frankly, it's done in some parts of the country. They do bring you the potatoes and the clams to the side and throw it in there. And we all know that that's not clam chowder. Just like we know that an NTA lacking gated time is not an NTA at all and therefore the stop time rule is not triggered. Well, what do you do? We've got a statute that refers not to a meal, but to quote unquote written notice. Which Ben and Karen says defined as a notice to appear. The refer itself has about three dozen references to a notice to appear or the written notice in the singular. A notice to appear, a written notice, a notice to appear, a notice to appear, and a notice. Let's agree there is a singular notice to appear that still doesn't tell us whether that singular item can be delivered in two parts. I think the example the Sixth Circuit uses is not a meal, but a book. You tell your publisher I'll get you the book by June 1st. In May you send the first half and the end of May you send the second half of the book. You then sent the book. It's not a book. That's a rough draft. Submitted a rough draft. I'm not following. I filed a brief on this court with an introduction. So call it a draft. It is a draft. Even though it's in two parts, it's a draft of the book. Right, but according to this court held that a single document labeled notice to appear must comply with certain set of requirements. A single document. How do we know it's a single document? We looked at the regulatory scheme in 1996 after IRR was adopted. The INS knew at the time that the regulatory scheme required a single form of notice. It says in the regulations that there shall be a single form of notice. So I have your brief. This is I-862. I have your brief right here. I gave you the first 20 pages and then 10 minutes later gave you the rest of it. Have I now given you a single document? I.e. your brief. I think you have given me a single document, but again the Supreme Court has So why can't the notice be the same way? I give you the first, not 20 pages, but two, and then I give you the third page. Because the Supreme Court has stated unequivocally it cannot be the case. Because otherwise it would be a three-wheel Chevy. You could perfect it with a hearing notice, that would be the fourth wheel. That whole analogy would make no sense at all. I understand the Sixth Circuit tries to use that analogy to say the Supreme Court is allowing people to have a fourth wheel. They say it's not like a three-wheel Chevy. It's stripped of its essential character. It's not a notice to appear. It's a putative document. There's language in there talking about why the Supreme Court is It's unfathomable for the Supreme Court why DHS can't actually serve a notice to appear with a date and time on it, because they used to. Pereira talks about 1229A notice to appear is a document given to non-citizens who appear for removal proceedings. It'll say non-citizens who appear for removal proceedings who are only seeking cancellation of removal. The Supreme Court says including as a trigger for the stop time rule. So despite the claims that it's only a narrow holding, it's a broad construction of the statutory scheme. And the statutory scheme under 1229A requires a notice to appear to include a time or place. Here, Mr. DeSilvera's notice did not include that information. By the time he had his removal proceeding, his individual hearing was in May of 2018, one month before the Pereira case was decided. At that time, he was here nearly 20 continuous years. Again, he has qualifying relatives that qualify him to seek cancellation of removal of certain non-permanent residents. He has a lot of equities, a lot of hardships. And he was never even given the opportunity to seek cancellation of removal because of a distortion by the Mendoza-Hernandez case. Mendoza-Hernandez is a 9-6 vote by the BIA that is entitled to no deference at all for this court. The BIA doesn't tell this court what the U.S. Supreme Court meant in its decisions. That's what this court's role is. And I think that is encroaching on the role of an Article III court for an agency to claim what the U.S. Supreme Court meant in Pereira v. Sessions. Pereira is an 8-1 decision. There was language throughout the case about how a document labeled as an O.S. 2.0 peer, captioned as an O.S. 2.0 peer, styled as an O.S. 2.0 peer, again, a putative document. And from its inception, in this case, Mr. DeSilvera was never given the time or the place, critical information as required by the Pereira v. Sessions case. He should be afforded the opportunity to seek cancellation of removal. And again, the Pontus case, I think, does stand for the same proposition. Common sense, discomfort, and adopting the position that a single document labeled O.S. 2.0 peer acquires that information. That's our position, and I would respectfully suggest that should be the position of this court as well, that our client's petition for review should be granted and he should be afforded the opportunity to apply for cancellation of removal, which he was erroneously denied that opportunity by the BIA. Thank you. You're welcome. Thank you. Good morning, Mr. Beck. Good morning, Your Honors, and may it please the Court, Greg Mack for the Attorney General. Fundamentals for the administration of justice are the principles of notice and opportunity to be heard. Petitioner received the notice in this case. Specifically, he received the document that completed the triggering of the stop-time rule in this case. Did that notice have all the information required by Pereira? It was a notice of hearing. No, please answer my question. No, it did not, because it was not a notice to appear. All right. And what did the Supreme Court say in Pereira about that kind of a notice? It said about that kind of a notice it cannot stop time in that particular case because it lacked the specific information of the time and date of the hearing. That's not this particular case. No? I'm sorry? I said no. It was a rhetorical no. How is it different? It's different in this sense, Your Honor. The Supreme Court in Pereira had no occasion to answer the question in this particular case. This is the second shoe out of two shoes in the Pereira case. In the Pereira case, the Court had no occasion to consider whether a notice of hearing could complete a defective notice to appear to effectuate the stop-time rule. So Pereira doesn't cover the waterfront with the defective notice to appear. We know that from this Court's decision in Goncalves-Pontes. So this issue is not... Well, it's slightly different, Gonzalez, in this case. Oh, absolutely. But the Supreme Court had no occasion to consider the issue in this case, whether a notice of hearing could complete a defective NTA to stop the time for the petitioner to approve towards cancellation of... So what it said, a notice that does not inform a non-citizen when and where to appear for a removal proceeding is not a notice to appear under Section 129A, and therefore does not trigger the stop-time rule. Is that dicta? No, it's not dicta, Your Honor. It's a specific holding of the Court that a notice to appear in that case that is defective cannot trigger the stop-time rule. Well, it doesn't say a notice to appear in that case. It says a notice to appear. Well, again, we're not arguing that the notice to appear in this case triggers the stop-time rule. We're saying the completion of a notice to appear was a subsequently served notice of hearing completes the process to stop the time towards cancellation of removal. The Supreme Court had no occasion to consider that particular question because by the time that Pereira received the notice of hearing, he had accrued the 10 years towards cancellation of removal. So this question was not before the Supreme Court at all. And again, it's our view that the Pereira decision doesn't cover everything on the waterfront with respect to notices of appearance and certainly doesn't compel the conclusion that this Court should grant the petition for review because you have a subsequently served notice of hearing that provided the information that was not provided in the notice to appear, therefore triggering the stop-time rule because the petitioner received both documents, one defective, the notice to appear, but the other effective with respect to the notice of hearing within that 10-year period, stopping his time towards cancellation or removal. Is the government still doing it this way and was it not including the date in the notice to appear? In some cases where it's impractical to do so, but mostly it's my understanding from DHS is that most of this problem has been cleared up. There are some issues with respect to Customs and Border Patrol adding the information in the notice to appear. But for the most point, the date and time information is getting into the notices of appear, particularly after Pereira, but that's not to say there aren't imperfect circumstances where it's not in the notice to appear. So we still may have these cases coming down the road in the future. It's not a moot issue, Your Honor. And then am I correct that even in the small subset of ones where it's still happening, it would be only a small set of those that we would have a time tolling issue? Correct. It's sort of like the St. Cyr issue. It may still be going on back after 1996, but those cases are going to dwindle away with respect to the elimination of 212C. So you may still have a subset of the subset of cases coming before all the courts of appeals. So why not just say we've got this legacy, we've cured it going forward in the future, and then as far as the legacy, instead of trying to stitch together these two documents that weren't really intended to be one thing, we'll just move on to the discretionary, because all this is is to give you discretionary TPS authority to the Attorney General to decide, right? It's not like it's a stay-here ticket. It's discretionary authority for the Attorney General to cancel removal. But Congress also had an important interest in stopping time when a notice to appear was served on the noncitizen. And then, of course, Act of Pereira and the Supreme Court's decision, well, we have to get to this two-step process. So we can't forget that Congress specifically wanted to stop time accruing before noncitizens could become eligible in the first instance for cancellation of removal. So there's still an important legislative interest with respect to stopping time and then, therefore, the immigration judge never even getting to the merits of a cancellation decision. Yeah, but then if we're getting to what Congress wanted, the most we know is they decided to call this thing a notice to appear, right? Right. So... And I think... It's not just Congress who's driving this bus. It's your client who has decided to interpret that language in a certain way that then creates this problem for this very small number of legacy cases which your client has full discretion how to ultimately handle on the merits anyhow. Correct, Your Honor, but again, the government still has an interest in supporting what Congress needs to do which is to create a stop time rule. And to a certain extent, the problem will go away in the future or may go away in the future, but I think the court has the Sixth Circuit's decision in the Garcia-Romo case that says we can stitch together this language to effectuate Congress' interest and with respect to that rule, I think as the Sixth Circuit indicated, you can't just focus on a notice to appear. A notice to appear doesn't cover the waterfront with respect to whether the Supreme Court meant to preclude the two-step process here. And I think the court's decision in Pontus accepts that two-step process with respect to completing a defective notice to appear for the purposes of initiating removal proceedings and you have a similar two-step process which petitioner will receive notice of by accepting the notice of hearing to stop his time within that 10-year period. What do you say about the language in Pontus that refers to a single document? I think the court there was looking to the jurisdiction issue and the commencement of removal proceedings. I don't think it covers the waterfront with respect to this case and whether you accept the two-step process. And I think petitioners and petitioners across the country put too much emphasis on that singular article A, A notice to appear. There's nothing to suggest that the two-step process was precluded by the Supreme Court in Pereira. I'm referring not to A notice to appear but rather in the opinion of our panel that referred to a single document. And I think in that case you were speaking to the commencement of removal proceedings, not this two-step process with respect to whether time would be stopped. And again, I think you look to the Sixth Circus decision I think which has paved the way for this court to understand it can occur in two collective documents. Multiple documents can stop time and petitioners, to get back to my original point, received notice of the two documents. He received the document that completed the triggering of the stop-time rule in this case. Would you agree that the statute in question here is unambiguous on this point? I believe it is unambiguous and we also in our brief argued that the court should defer. Why? If it's unambiguous, are you still arguing Chevron? Well, let me be clear. Can you just tell me if you are still arguing Chevron? Yes, because our brief argues Chevron. I understand I said unambiguous but I want to be clear also, I think the Supreme Court has said to be very careful and I think it's a reflexive point sometimes for the government to say, look, it's ambiguous and defer to the government. But I think you could look at this language in the statute as being unambiguous as the Sixth Circuit stated, but I think if you still have questions about whether it's unambiguous, I think you then defer to the government's interpretation. I think you get there on a plain interpretation of the statute, but as we indicated in our brief, we think you should defer to the board's decision in Mendoza-Hernandez. Well, if it's unambiguous, why are you in a better position than the court to decide what the law is? We're not. And I'm not suggesting we're in a better position. It's a de novo question if the statute's unambiguous it's a plain language interpretation but we think the best interpretation is to accept the two-step process. So I think you get there under both the plain language interpretation of the statute and if you can't get there on the plain language interpretation of the statute, then I think you can defer to Mendoza-Hernandez, which I think is what the Sixth Circuit did in this particular case. We urge the court to follow the Sixth Circuit's decision. If there's no further questions, we ask the court to deny the petition for review. Thank you.